IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

| | |
|---|---|
| DENNIS WEDEKIND, JR.<br>278 Neill Run Road<br>Delta, PA 17314<br>   Plaintiff,<br> v.<br><br>MCDONOGH SCHOOL, INCORPORATED<br>8600 McDonogh Road<br>Owings Mills, MD 21117<br><br>Serve: Jennifer L. Curry<br>100 Light Street, 19th Floor<br>Baltimore, MD 21202<br><br>   Defendant. | Civil Action No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Overview of the Case

1. Plaintiff Dennis Wedekind, Jr. ("plaintiff") here sues defendant McDonogh School, Incorporated ("McDonogh" or "school") for substantial monetary damages arising from the serious harms and injuries plaintiff suffered when he was a four-year high school boarding student at McDonogh (1980-84). During plaintiff's years at McDonogh, the school's Dean of Students was Alvin J. Levy ("Levy" or "Dean Levy") (deceased). As the school later acknowledged, its administration and board knew that Levy had been abusing McDonogh students for decades prior to plaintiff's enrollment there in 1980. Rather than removing Levy and protecting plaintiff (and others), the school covered up this knowledge and allowed and enabled Dean Levy to abuse plaintiff. McDonogh breached its obligation to plaintiff to protect him from harm.

Parties

2. Plaintiff Dennis Wedekind, Jr. is a citizen of the Commonwealth of Pennsylvania, residing at 278 Neill Run Rd., Delta, PA 17314.

3. Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Rd, Owings Mills, MD 21117.

Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Pennsylvania) and defendant (Maryland), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2), venue is proper in this Court both because defendant resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

Statement of Facts

Plaintiff's attendance and residence at McDonogh and the abuse he suffered there

5. Plaintiff began attending and boarding at McDonogh as a high school freshman in 1980, and he remained as a boarding student there until 1984. As a boarding student, plaintiff was in the care and custody and subject to the authority of the school twenty-four hours of every school day for four years. Plaintiff was entitled to the school's protection and the school had a duty to provide it.

6. Alvin J. Levy was McDonogh's Dean of Students all four years of plaintiff's time at the school. Before plaintiff started at the school in 1980, the school knew that Dean Levy had

2

decades of history of engaging in totally inappropriate and harmful conduct with male students, crossing all lines of decency, propriety, and legality. By way of illustration, he shamelessly expressed his aggressive sexual interest in and attraction to the young adolescent boys at McDonogh; he would touch minor-age boys and rub them provocatively to provoke a sexual response and without "consent" (which most were not of sufficient age to grant); when students resisted, Levy would overcome that resistance by force; Dean Levy would comment favorably, but plainly inappropriately, on boys' size, strength, and good looks and these sexually charged comments were typically followed by Levy's grabbing some part of the student's body; and he had the truly inappropriate and for students unsafe practice of having boys shower at his house.

7. Prior to 1980, Dean Levy's predatory sexual conduct was known to and discussed among McDonogh board members, administrators, and faculty. McDonogh board members, administrators, and faculty also knew or should have known of Dean Levy's predatory sexual conduct in the years 1980-84, the years plaintiff was a student at the school and boarding there.

8. The position of Dean of Students, which Levy held, is a senior position in McDonogh's administrative structure. By definition and design, holding the position of Dean of Students gives the incumbent (Levy) significant power and authority over McDonogh's students' lives and their experience at McDonogh. This power is especially strong and its abuse strongly felt in the case of students, like plaintiff, who boarded at the school.

9. Flaunting and exploiting his badge of authority as Dean of Students, Levy exploited and abused plaintiff. By force and over plaintiff's clearly stated express objections, Levy victimized plaintiff, a young student, to extract Levy's version of pleasure or satisfaction. On multiple occasions over the years 1980-84, Dean Levy sexually assaulted plaintiff and violated his

3

bodily integrity.[1] Levy's abusive actions and personality-destroying predatory sexual assaults, attempted assaults, and other inappropriate behavior occurred at places of his choosing, including in the Dean of Students office, the plaintiff's dorm room, and other locations in and around school facilities.

10. Dean Levy's sexual assaults violated plaintiff's personhood, the integrity of his body, and his sense and ability to exercise control and agency over his life and body. Dean Levy acted notwithstanding the plaintiff's explicit verbal objections and physical resistance. Saying "no" did not matter; consent, permission, plaintiff's youth, and vulnerability were of no concern or impediment to Levy. Plaintiff was Levy's "next man up." Dean Levy knew he had the power, physically, emotionally and otherwise, to get what he wanted, using force as "necessary" to achieve his wrongful objective of pleasing himself. Levy exercised his abusive power ruthlessly when doing so suited him.

11. Dean Levy touched and groped the most private areas of plaintiff's body. McDonogh's Dean of Students did this because, without regard for the age or rights of his victim, he could. Presumably, Levy found his unwanted and unlawful touching and groping actions stimulating, pleasurable, and exciting. Levy abusively exploited, intimated, and bullied plaintiff for his own pleasure. Plaintiff did not consent to Dean Levy's sexual assaults. To the contrary,

---

[1] Maryland's recent Child's Victim Act (effective October 1, 2023) abolishes statutes limitations for the claim stated in this complaint. The constitutionality of that Act is being challenged. Maryland trial courts are split on the issue and an appeal has been noted in at least one case. There is no extant appellate decision on the Act's constitutionality, nor has any court issued an order barring the filing or pursuit of cases in which the Act's prohibition of limitations might be invoked in defense.

plaintiff objected to and resisted Levy's advances and assaults, and plaintiff did so as effectively and strongly as he was physically and mentally capable.

12.     McDonogh knew of the harm Dean Levy could cause because the school knew of his conduct prior to plaintiff's enrollment in 1980. Despite this knowledge, McDonogh's board, administration, and faculty took no action to remove or restrain Dean Levy. McDonogh did not do the most obvious thing it could have and should done: remove him from the school. Instead of cutting the cancer out, the school, board members, administrators, and teachers, chose – and it was a choice – silence and inaction (complicity). The school and its legally responsible officers and agents were confronted with the blunt and ugly fact that McDonogh was and had been inhabited and infected by an active, aggressive, repetitive sexual predator (Dean Levy) whose prey of choice was young male McDonogh students. McDonogh's collective silence and inaction enabled Dean Levy's horrific conduct to continue. Starting in 1980, plaintiff became the next involuntary recipient of Levy's abuse and exploitation.

13.     Levy demonstrated and exercised his power and control over plaintiff by simultaneously engaging in a collateral campaign of abuse and harassment. By way of illustration, Levy threatened plaintiff with the risk of expulsion to cower, scare, and intimidate him, presumably thinking this would make plaintiff more vulnerable and easier to victimize; he orchestrated or directed the ransacking of plaintiff's dorm room while plaintiff was in class; and he subjected plaintiff to discriminatory discipline by, for example, curtailing plaintiff's supposed "free time" and requiring plaintiff to be in his room earlier than other students.

14.     Plaintiff told his father of the sexual abuse, harassment, intimidation, and use of force plaintiff suffered and endured at McDonogh. Plaintiff's father did not believe his son.

5

Plaintiff's father could not comprehend that McDonogh, a place for which he had a high regard, would employ and retain a sexual predator or expose his son to the harm and abuse plaintiff described.

<u>Plaintiff's harms and injuries</u>

15. Plaintiff suffered immediate harm and injury as a result of Levy's attacks and McDonogh's inaction and complicity. These injuries are ongoing and life-altering. The direct and proximate cause of these injuries is the actions of Dean Levy and the actions, inactions, and negligence of McDonogh. McDonogh knew that its Dean of Students had been engaging in wrongful student-destroying sexual misconduct for more than thirty years by the time plaintiff became his victim.

16. Plaintiff suffered severe and extreme emotional distress during his high school years. Plaintiff's four years at McDonogh were years of horror, fear, abuse and intimidation. McDonogh was then and is now a dark place for plaintiff. The school haunted him then and it haunts him now. He was overwhelmed and scared by the totally unchecked and unpredictable power Dean Levy had over him. Plaintiff was ashamed of his "relationship" with Dean Levy as if plaintiff had somehow caused or contributed to Dean Levy's conduct and behavior.

17. The types of harms plaintiff suffered and continues to suffer include difficulty in trusting others, particularly those in authoritative positions, *e.g.*, teachers, law enforcement officials, doctors, therapists, and most tragically, his parents; feelings of helplessness and hopelessness; depression; fits of rage and violence; inability to find purpose in life; inability to treat others with proper respect; substance abuse; and contemplation and attempt of self-harm; and self-destructive conduct resulting in physical harm and legal jeopardy.

18.     Plaintiff lost his relationship with his father because his father did not believe his son's tale of the horror of plaintiff's life at McDonogh. For the son, it was the father's refusal to believe his son; for the father, it was the son's perceived lack of truthfulness and credibility.

19.     Long after plaintiff left the school in 1984, McDonogh acknowledged Levy's history of sexually abusing students and the school's failure to act on information it had at the time of Levy's conduct, including when plaintiff was a student. Only then did plaintiff's father attempt to reconcile with his son. That did nothing to cure the years of a lost father-son relationship and did not fully cure the breach going forward. Plaintiff has lived most of his life without having a strong relationship with his father, a deep loss which McDonogh caused and failed to prevent or even to mitigate by timely disclosure.

<u>Dean Levy's indictment and McDonogh's highly belated disclosures</u>

22.     More than thirty years after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that Alvin Levy, the school's long time former Dean of Students who had repeatedly sexually attacked and abused plaintiff, had previously been indicted on charges of sexual abuse. This indictment, the school confirmed, was issued in 1992, twenty-four years prior to the school's communication. McDonogh has not explained its truly extraordinary and plainly calculated delay in reporting the "news" of Levy's indictment to potentially affected parties. While Levy died prior to the disposition of the charges against him, the school subsequently reported that Levy had no intention to contest the charges.

23.     McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Dean Levy. Almost three years later, this investigation was completed. The investigation included confirmation of what had been long known in and

7

around the school, including by board members, administrators, and faculty, regarding Levy's sexually abusive actions. The investigation determined that "Levy and [another] engaged in sexual misconduct with 19 [known] male students—*Mr. Levy from the 1940s through the 1980s*." (Emphasis added.)

24.     As the investigative report makes clear, Levy's sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

25.     The school was aware that Dean Levy had been engaged in sexual misconduct with male students for more than three decades before he engaged in sexual misconduct with plaintiff.

26.     McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm notwithstanding its knowledge of the risk that Levy's presence on campus and in dorm rooms presented to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff. With calculation and deliberate intent, McDonogh strategically delayed for twenty-four years the disclosure of Levy's indictment and then delayed for three years the completion/release of its investigative report.[2]

---

[2] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students). *But see* n. 1 supra (Maryland Child Victim's Act bars limitations as a defense here).

Claim for Relief – Negligence

27. Plaintiff here adopts and incorporates by reference every fact and allegation contained in ¶¶ 1-26.

28. Plaintiff was, for four years, a high school student at McDonogh. Plaintiff boarded at the school all four years. McDonogh owed plaintiff a duty of reasonable care and protection during those four years. McDonogh breached it duty of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

29. McDonogh breached its duty of care to plaintiff by: negligently hiring Levy, including failing to properly and adequately vet him and his history prior to his hiring; negligently failing to oversee, monitor, supervise and discipline Levy after his hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of Levy's abusive improper sexual conduct with McDonogh students; failing to investigate allegations and reports that the school's Dean of Students was sexually abusing the school's students and had been doing so for decades; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about Levy's multi-decade history of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent Levy's access to plaintiff, including in his dorm room and other places where he could isolate plaintiff; failing to have necessary monitors in plaintiff's dormitory to prevent Levy's access to plaintiff or to respond to plaintiff's cries for help and assistance when Levy attacked him; failing to take disciplinary or corrective action with respect to Levy despite the school's knowledge of his actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about Levy's sexually abusive actions to appropriate law enforcement authorities, thereby allowing

9

Levy's misconduct to continue and at plaintiff's expense; by allowing Levy to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and his parents of Levy's sexual proclivities; by failing to promptly conduct a post-indictment investigation of Levy; by failing, upon notice of Levy's conduct, to remove Levy of any and all positions and responsibilities at McDonogh and barring him from the campus forever.

30.  McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) boarded. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage. Plaintiff was a foreseeable Levy victim and McDonogh failed to take reasonable actions under the circumstances to prevent Levy's access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became Levy's victim. Levy's sexual abuse of plaintiff and all the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

31.  As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered physical, emotional, and psychological injuries, severe emotional pain, suffering and distress, depression, substance abuse, and an overall loss of enjoyment of life. Plaintiff's injuries began in his student years (1980-84), and have been and are ongoing and continuous to date. Plaintiff has sought care and treatment, with only limited success, and may continue to do so. His injuries are serious, ongoing, and will continue for the balance of his life.

<u>Prayers for Relief</u>

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury, plus available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

<u>Demand for Jury Trial</u>

Plaintiff hereby respectfully demands a trial by jury.

Respectfully submitted,

*/s/ Ari S. Casper*
Ari S. Casper (Bar # 14512)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
Attorney for Plaintiff